IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GUADALUPE PERALES,

      Plaintiff,

vs.                                                          No.  03cv0643 DJS

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

## MEMORANDUM OPINION

This matter is before the Court on Plaintiff's (Perales') Motion to Reverse Administrative Agency Decision, or in the Alternative, a Remand of This Matter **[Doc. No. 6]**, filed October 30, 2003, and fully briefed on March 1, 2004.  On August 28, 2002, the Commissioner of Social Security issued a final decision denying Perales' claim for disability insurance benefits and supplemental security income benefits.  Having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, the Court finds the motion to remand is not well taken and will be DENIED.

### I.  Factual and Procedural Background

Perales, now forty-nine years old, filed her application for disability insurance benefits and supplemental security income benefits on April 16, 2001, alleging disability since March 28, 2001, due to poor vision, back pain and numbness, diabetes, heart problems, headaches, dizziness, and depression. Tr. 12.  Perales has a third grade education (Mexico) and past relevant work as a dairy milker, motel maid, laundry worker, meat cutter, hospital cleaner, factory worker, and candy

packer. Tr. 15. On August 28, 2002, the ALJ denied benefits, finding Perales had severe impairments consisting of diabetes mellitus and low back pain, but these impairments did not meet or medically equal one of the impairments listed in Appendix I, Subpart P, Regulations No. 4. Tr. 18. The ALJ further found Perales retained the residual functional capacity (RFC) for light work with occasional postural movements. Tr. 15. The ALJ further found Perales' complaints were "well in excess of objective findings" and not credible. *Id.* Perales filed a Request for Review of the decision by the Appeals Council. On March 25, 2003, the Appeals Council denied Perales' request for review of the ALJ's decision. Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes. Perales seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Moreover, "all of the ALJ's required findings must be supported by substantial evidence," *Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the relevant medical evidence of record must be considered in making those findings, *see Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989). "[I]n addition to discussing the evidence supporting his decision, the ALJ must

discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Therefore, while the Court does not reweigh the evidence or try the issues de novo, *see Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the Court must meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings, in order to determine if the substantiality test has been met. *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

### III.  Discussion

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)). The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *Thompson*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show she is not engaged in substantial gainful employment, she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities, and her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to

the Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. *Id.*

In support of her motion to reverse, Perales makes the following arguments: (1) the ALJ erred in his evaluation of her pain; (2) the ALJ's RFC determination is not supported by substantial evidence and is contrary to law; (3) the ALJ erred in his evaluation of the vocational expert's testimony; and (3) the ALJ erred in not considering the combination of her physical and mental condition.

### A.  Pain Evaluation

To qualify as disabling, pain must be severe enough– either by itself or in combination with other impairments– to preclude **any** substantially gainful employment. *See Brown v. Bowen*, 801 F.2d 361, 362-63 (10th Cir. 1986). The Tenth Circuit has enumerated for consideration the following factors when analyzing a claimant's pain evidence: (1) Whether a claimant has established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the claimant's subjective allegations of pain; and (3) whether, considering all the evidence, both objective and subjective, claimant's pain is in fact disabling. *Musgrave*, 966 F.2d at 1376 (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)). Objective evidence includes physiological and psychological evidence that can be verified by external testing. *See Thompson*, 987 F.2d at 1488-89. Subjective evidence comprises statements from the claimant and other witnesses that are evaluated on their credibility. *See id.* at 1489.

Perales contends the "evidence of record clearly documents a pain producing impairment that is consistent with [her] testimony at the hearing." Pl.'s Mem. in Supp. at 2. The Court disagrees. Although the medical record indicates Perales may have a pain producing impairment, it does not support her allegations that the pain is disabling. *See Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990)(per curiam)(subjective complaints alone are insufficient to establish disabling pain). The ALJ acknowledged that Perales had "symptom-producing medical problems" but found the evidence did "not credibly establish pain and functional limitations to the extent alleged." Tr. 15. The Court has meticulously reviewed the record and found no evidence that any of Perales' physicians found her pain disabling or restricted her activities for any significant length of time. Accordingly, the Court finds that substantial evidence supports the ALJ's finding that Perales' pain was not disabling.

**B. RFC Determination**

Residual functional capacity is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirement of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(c). In arriving at an RFC, agency rulings require an ALJ to provide a "narrative discussion describing how the evidence supports" his or her conclusion. See SSR 96-8p, 1996 WL 374184, at *7. The ALJ must "discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." *Id.* The ALJ must also explain how "any material inconsistencies or ambiguities in the case record were considered and resolved." *Id.* "The RFC assessment must include a discussion of why reported symptom-

related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.*

In his decision, the ALJ set forth Perales' medical record (Tr. 13-15) and concluded:

Although the claimant has "severe" impairments, they are not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P of 20 CFR Part 404. Careful consideration has been given particularly to §§ 1.04 and 9.08. The claimant's back condition has not been quantified to comport with the requirements of any listed impairment discussed in Section 1.04. With respect to diabetes mellitus under Section 9.08, there has been no evidence of any neuropathy demonstrated by significant and persistent disorganization of motor function into extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station. Therefore she falls short of satisfying listing-level severity criteria so as to justify a presumptive conclusion of disability.

A determination must therefore be made whether the claimant retains the residual functional capacity to perform any of her past work or other work existing in significant numbers in the national economy. The term "residual functional capacity" is defined in the Regulations as the most an individual can still do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks (20 CRF §§ 404.1545 and 416.945 and Social Security Ruling 96-8p).

The claimant has symptom-producing medical problems, but her testimony and other evidence do not credibly establish pain and functional limitations to the extent alleged. The claimant testified that she is unable to work due to visual problems. Her vision blacks out three to four times every day for about five minutes at a time, especially when going outdoors or coming indoors. The claimant testified that she suffers with back pain, her arms and legs go numb, and her feet become swollen. She raises her feet on pillows to sleep and elevates her feet two to three times a day for 15 to 20 minutes. She can sit 20 to 30 minutes then has to lie down, stand 20 to 30 minutes, and walk one to one and one-half blocks. She can lift no more than 10 pounds, and can bend but cannot stand back up. She stated that she experiences pain, cramping and numbness in her hands, that her daughter does the household chores, and she only folds clothes. She has a valid driver's license but does not drive. The claimant further stated that for almost a year she was seen weekly for depression, but not anymore.

The claimant's complaints are well in excess of objective findings. Her history of non-compliance with treatment for diabetes and evidence of symptom magnification with respect to visual and pain complaints further undermine her credibility. Based on these factors and the claimant's appearance and demeanor at the hearing, I can give little weight to her testimony.

I have also considered the opinion of the State Agency medical consultants, who previously determined that based on the claimant's physical capability, she should be able to perform medium work activity (Exhibit 4F). This opinion does not fully account for the claimant's

> documented medical conditions and is not based on examination and is therefore discounted accordingly.
>
> I find that the claimant retains the residual functional capacity for light work with occasional postural movements.

Tr. 14-15.  Perales contends the ALJ erred in his RFC determination because he failed to consider her visual problems, her lack of strength, and her inability to stand or walk except for brief intervals.  Pl.'s Mem. in Supp. at 5.  Perales claims she lacks the RFC to do any kind of work.  *Id.*  Perales also argues the Commissioner's "argument that [she] is not credible because of her noncompliance with treatment is wrong."  Pl.'s Reply at 1.

It is clear from the ALJ's decision that he considered Perales' visual problems and her complaints of lack of strength and inability to stand or walk for more than 20 to 30 minutes.  The ALJ, however, did not find Perales credible and concluded her limitation were not as severe as she alleged.  Credibility determinations are peculiarly the province of the finder of fact and will not be upset when supported by substantial evidence.  *Diaz v. Secretary of Health and Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990).  In finding Perales not credible, the ALJ set forth the specific evidence he relied on in evaluating her credibility.  *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)(The ALJ need only set forth the specific evidence he relies on in evaluating claimant's credibility.)  The ALJ also considered his personal observations of Perales in his overall evaluation of her credibility.  This was proper.  *Id.* (ALJ may consider his personal observations of the claimant in his overall evaluation of the claimant's credibility.).  Because substantial evidence supports the ALJ's credibility determination, the Court will not disturb it.

Specifically, in his credibility determination, the ALJ considered Perales' physical therapist's July 17, 2001 Discharge Summary.  Tr. 14.  In the Discharge Summary, under

7

"Assessment," the physical therapist noted that Perales had exaggerated symptoms and flinched with any palpation or light touch to her neck and back. Tr. 120. And, although the ALJ <u>did not</u> deny Perales benefits for failure to follow her prescribed course of treatment for diabetes, he did consider her non-compliance in finding her not credible. This was proper. *See Diaz,* 898 F.2d at 777 (Failure to follow a prescribed course of treatment, without good reason, is grounds for denial of disability benefits, 20 C.F.R. 404.1530(b), and can be the basis for discrediting claimant's subjective complaints.). The record is replete with entries documenting Perales' failure to comply with her treating physician's treatment. *See, e.g.*, Tr. 178 (diabetes poorly controlled); Tr. 192 (Type II Diabetes, relatively poorly controlled); Tr. 202 (diabetes mellitus– poor control); Tr. 203 ("Diabetes Mellitus– poor control (uncontrolled) – Diabetic teaching done, nutrition consult pending"); Tr. 207 (diabetes mellitus– poor control, nutrition consult scheduled); Tr. 209 (Glucose level 380– normal values are 65-105 mg/dL); Tr. 212.a (Diabetes flow sheet– 22 elevated glucose readings); Tr. 218 ("Diabetes Mellitus– poor control Hb A1c [1] <u>9.9</u>); Tr. 226 (Glucose 393– advised to control blood sugar); Tr. 227 (Glucose 202); Tr. 234 (Glucose 247).

     Next, the ALJ considered Dr. Thomas J. Carlow's June 19, 2002 evaluation (Tr. 296-301). Tr. 14. Dr. Carlow is a neuro-ophthalmologist. In his report, Dr. Carlow questioned the results of his evaluation. Dr. Carlow noted, "I think that her visual acuity and fields are substantially better than she admits to, given the above exam." Tr. 301. During the visual fields examination, Dr. Carlow also noted, "The patient states she could not see a size V target. When I

---

[1] **Glycosylated hemoglobin**– Most physicians periodically determine glycosylated hemoglobin (Hb A1c) to estimate plasma glucose control during the preceding one to three months. In most laboratories, the normal Hb A1c is bout 6%; in poorly controlled diabetes, the level ranges from 9 to 12%. *The Merck Manual* 170 (17th ed. 1999).

attempted to do Goldmann perimetry, however, she would flip to the target with her eyes which I was monitoring from behind the bowl. She would not respond, however, by pressing the beeper." Tr. 300. Significantly, Dr. Carlow found Perales had "**minimal** background diabetic retinopathy, and early cataract."[2] Tr. 301. Dr. Carlow opined the cataract was not significant. *Id.*

Perales' complaints of back problems also do not support a finding of disability. In terms of her back problem, the record indicates as follows:

On February 25, 2000, Perales went to the emergency room at Eastern New Mexico with abdominal pain. Tr. 192. By the second day, the pain had diminished and was mainly in her back. She was admitted to the hospital. Perales had a negative CT scan of the abdomen, negative ultrasound, and negative urinalysis. The physical examination indicated "she was depressed and was tender all over her back, rather than at a precise point." *Id.* Otherwise, the examination was unremarkable. The attending physician ordered x-rays of the lumbosacral spine. The physician noted she was "able to walk without any pain and has been self-caring." *Id.* The physician diagnosed Perales with musculoskeletal pain of her lower back, depression, and Type II diabetes, poorly controlled. The physician discharged Perales and prescribed Vioxx 25 mg daily and Tylenol two tablets three times a day. The physician noted Perales' multiple emergency room visits with at least two admissions for similar symptoms of abdominal pain. Tr. 197.

On January 13, 2001, Perales went to the emergency room at Eastern New Mexico Medial Center with complaints of low back pain. Tr. 167. The physical examination was normal. *Id.* Her blood glucose level was 247. Tr. 165.

---

[2] At the administrative hearing, Perales testified, "I can be, I can be seeing okay, and all of a sudden I just have blurred vision." Tr. 27. Hyperglycemia (elevated blood glucose levels) may cause blurred vision. *The Merck Manual* 168 (17th ed. 1999).

On March 31, 2001, Perales went to the emergency room at Eastern New Mexico Medical Center with complaints of pain in her left rib area and her L-spine and T-spine areas. Tr. 136. Perales reported she had been involved in a motor vehicle accident a few days before and had not been hurt but was now feeling uncomfortable. Perales reported the force of impact was low. Tr. 138. Perales complained of a sharp and aching pain in her lower back and rated the pain an 8 on a 10 point scale. Tr. 144. The examination revealed muscle spasms of the neck. The attending physician ordered a chest x-ray and x-rays of the back. The chest x-ray was normal. Tr. 143. The back x-rays indicated "[n]o acute abnormalities noted in the chest, thoracic spine or lumbar spine. Mild degenerative changes at L5-S1 in the facet joints." *Id.* The physician prescribed Motrin 800 mg and Darvocet for the pain, a muscle relaxant for the spasms, and advised her to alternate ice and heat. Tr. 137. The physician advised Perales to see her primary care physician. C. Flury, a physician assistant, also attended Perales. Tr. 139.

On April 2, 2001, Perales went to her primary care provider for follow-up of her emergency room visit. Tr. 223. Perales complained of back pain and abdominal pain which she stated was caused by hitting the steering wheel in the automobile accident. Mr. Flury noted he had seen her in the emergency room on March 31, 2001. Perales reported that she had not been able to afford the medication prescribed in the emergency room. Mr. Flury opined that was the reason she was not doing any better. Mr. Flury administered a Demerol and Phenergan injection for her pain and noted Perales would be "off work until Thursday." *Id.* Perales told Mr. Flury she would get her medications that day.

On April 9, 2001, Perales returned for her follow-up. Tr. 222. Perales also complained of blurred vision. Mr. Flury noted muscle spasms in the sternocleidomastoid region, trapezius

region, and pectoralis region, otherwise, the physical examination was normal. Tr. 223. Mr. Flury noted Perales had not taken her pain medication as prescribed. Mr. Flury advised her to take her medication as prescribed or she would not get better.

On April 11, 2001, Perales returned to see Mr. Flury. Tr. 220. Perales stated she could not work due to back pain in her right side. Perales stated she was afraid of renal failure because of her hypertension. Mr. Flury reassured Perales that her blood pressure was controlled. Mr. Flury ordered lab work (BUN and Creatinine); the results were normal.

On April 17, 2001, Perales returned for her follow-up visit. Tr. 216. Perales' chief complaint was feeling "bloated" since the accident. Mr. Flury evaluated Perales. The physical examination revealed muscle spasms in the sternocleidomastoid region radiating down to the trapezius region. The physician assistant diagnosed Perales with muscle spasm. Mr. Flury advised Perales to continue taking the Vioxx.

On May 2, 2001, Perales saw Kathy Mallion, a physician assistant. Tr. 212. Perales complained of leg and back pain. The physical examination revealed tenderness of the back muscles and limited range of motion secondary to pain. Ms. Mallion diagnosed Perales with back strain status post motor vehicle accident and prescribed massage, moist heat and Vioxx for pain. Ms. Mallion noted that physical therapy was pending approval of Perales' indigent application. Ms. Mallion directed Perales to return for a follow-up visit in one month.

On June 22, 2001, Ms. Mallion evaluated Perales for neck and back pain. Tr. 204. On physical examination, Ms. Mallion noted, "lumbar spine diffusely tender." *Id.* Ms. Mallion diagnosed Perales with "back pain– chronic (status post motor vehicle accident) and prescribed Vioxx and Tylenol.

On June 29, 2001, Kevin Swanson, a licensed physical therapist evaluated Perales at Ms. Mallion's request. Tr. 122. Mr. Swanson noted Perales was independent with gait and mobility and was "in no apparent acute distress, but does flinch and report pain throughout her body to palpation." *Id.* Mr. Swanson's physical examination revealed Perales had normal range of motion of her back except for extension, which was limited. Muscle strength was intact, reflexes were normal and sensation was intact. Mr. Swanson noted Pareles was "tender to palpation to bilateral ASIS and throughout paraspinals from thoracic to lumbar." *Id.* Pareles also had a "positive straight leg raise at approximately 60 degrees bilaterally." *Id.* Mr. Swanson assessed Perales with back pain of moderate severity and irritability. Tr. 123. Mr. Swanson recommended physical therapy two to three times a week for four weeks.

On July 10, 2001, Perales returned to see Ms. Mallion. Tr. 203. Perales complained of back pain. Ms. Mallion noted "trapezii muscles tender to palpation, lumbar spine tender." *Id.* Ms. Mallion diagnosed Perales with "back pain – s/p MVA (status post motor vehicle accident) and prescribed Vioxx 25 mg twice day.

On July 17, 2001, Kevin Swanson discharged Perales from physical therapy because she had not experienced long-term relief from the treatment. Tr. 120. Mr. Swanson opined Perales had exaggerated symptoms and referred her to her physician.

The record corroborates Perales' complaints of back pain but not to the degree alleged. The March 31, 2001 back x-rays indicated only mild degenerative changes at L5-S1. Tr. 136. In addition, Mr. Flury and Ms. Mallion, her primary health care providers, did not permanently restrict her activity.

The ALJ also addressed Perales' allegations that she had heart problems and severe headaches. Tr. 14. The ALJ cited to the record, noting a October 19, 2001 chest x-ray indicated no cardiomegaly (Tr. 291). *Id.* Perales also had normal EKGs on November 6, 2000 (Tr. 184) and June 20, 2001. Tr. 132. As to her complaints of severe headaches, the ALJ cited to Perales' January 15, 2001 CT scan of the brain which was normal. *Id.* Perales also had a negative CT scan of the brain on June 20, 2001. The Court has reviewed the medical record and found no evidence that Perales suffers from a disabling heart condition or disabling headaches. Accordingly, the ALJ's finding that Perales had symptom-producing medical problems but the evidence did not establish "pain and functional limitations to the extent alleged," and thus were not disabling is supported by substantial evidence. It is not this Court's role on appeal from this agency determination to reweigh the evidence or to substitute its judgment for that of the Commissioner. *See Hargis v. Sullivan*, 945 F.2d 1482, 1486 (10th Cir. 1994).

## C.  Evaluation of Vocational Expert Testimony

Perales contends the vocational expert (VE) testified she could not return to her past relevant work, yet the ALJ ignored this testimony. However, this testimony was in response to Perales' counsel's own hypothetical. Counsel asked the VE, "Let us say we have an individual who has to take unscheduled time outs . . . has to elevate her feet three or four times a day . . . unscheduled times up to 15 or 20 minutes . . . would that affect those jobs." Tr. 38; Pl.'s Mem. in Supp. at 6. However, hypothetical questions need not take into account all of Perales' alleged impairments. Questions to the VE are proper when they take into account the impairments substantiated by the medical reports and the impairments accepted as true by the ALJ. *See Gay v. Sullivan,* 986 F.2d 1336, 1340041 (10th Cir. 1993); *Talley*, 908 F.2d at 588. Only when Perales'

13

counsel presented his hypothetical containing unscheduled time outs and a need to elevate her feet three or four times a day for up to 20 minutes did the VE opine that she could not return to her past relevant work.  There is no evidence in the record to support Perales' claim that she needs to take "unscheduled time outs" or has to elevate her feet three or four times a day for up to 20 minutes.  Accordingly, the ALJ properly rejected the VE's response based on his credibility assessment and the medical records.

### D.  Mental Impairment

Perales contends the ALJ failed to address the issue of her mental impairment.  The Court disagrees.  The ALJ specifically found: "The claimant has a history of depression.  I find that she has only mild functional limitations in the categories of the B criteria.  I therefore conclude that the claimant has not met her burden of proving that she has a severe mental impairment as defined by the Regulations."  Tr. 14.  The record supports the ALJ's finding.  There are two references to depression in the record.  *See* Tr. 192 (on February 25, 2000, the attending noted Perales appeared depressed and recommended she be started on Paxil in the outpatient clinic); Tr. 204 (on June 22, 2001, Ms. Mallion noted Perales reported feeling depressed and gave her Paxil samples).  There are no notations by any of Perales' physicians that her depression was disabling.  Moreover, at the administrative hearing, Perales testified that in the past she had seen a counselor for her depression but was no longer receiving any treatment for her depression.  Accordingly, the Court finds that the ALJ's finding that Perales' depression is not severe is supported by substantial evidence.

**E.  Conclusion**

The Court's review of the ALJ's decision, the medical record, and the applicable law indicates that the ALJ's decision adheres to applicable legal standards and that substantial evidence supports the ALJ's determination that, despite her limitations, Perales retained the RFC to return to her past relevant work.

A judgment in accordance with this Memorandum Opinion will be entered.

          **DON J. SVET**
          **UNITED STATES MAGISTRATE JUDGE**